UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED by D.C.
NOV 25 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. W.P.B

CASE NO. 03-80869-CIV-MARRA

LIN GOSMAN,

Appellant,

vs.

THE PALM BEACH POST,

Appellee.

**BRIEF OF APPELLEE, THE PALM BEACH POST**

On appeal from the United States Bankruptcy Court
For the Southern District of Florida, West Palm Beach Division

Appeal of Judge Larry Lessen's August 18, 2003 Order
Unsealing Court Records and Allowing Public Access to Judicial Proceedings

L. Martin Reeder, Jr.
REEDER & REEDER P.A.
675 West Indiantown Rd., Suite 201
Jupiter, Florida 33458
Tel.: 561-575-9750
Fax: 561-575-9765
martn@reederandreeder.com

*Attorneys for The Palm Beach Post*

NON-COMPLIANCE OF S.D. fla. L.R. 5.1.B

25

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................i

TABLE OF AUTHORITIES....................ii

STATEMENT OF ISSUE PRESENTED....................1

APPLICABLE STANDARDS OF APPELLATE REVIEW ....................2

STATEMENT OF THE CASE....................4

I. The Nature of the Case....................4

II. The Facts Relating to the June 5, 2002 Blanket Closure Order....................7

III. Colonial Unsuccessfully Seeks to Modify the Blanket Closure Order.....11

IV. Judge Hyman Recuses Himself; Adversary Proceedings Reassigned to Judge Lessen....................12

V. The Palm Beach Post Seeks and Ultimately Obtains an Order Vacating the Blanket Closure and Opening the Adversary Proceedings to the Public....................13

SUMMARY OF THE ARGUMENT....................15

ARGUMENT....................17

I. Blanket Secrecy Orders Are So Destructive to First Amendment Freedoms and Common Law Rights of Access to Judicial Proceedings that They Are Rarely, if Ever, Justified....................17

II. Bankruptcy Code Section 107(b) Did Not Require the Bankruptcy Court to Maintain the Blanket Secrecy of the Adversary Proceedings....................20

III. To Continue the Blanket Order, Ms. Gosman Must Prove that Denial of Access is Necessitated by a Compelling Governmental Interest and Is Narrowly Tailored to that Interest....................24

CERTIFICATE OF SERVICE....................27

# TABLE OF AUTHORITIES


**Cases** **Pages**

*Akron Beacon Journal v. Metropolitan Life Ins. Co.*
1995 WL 234710 (S.D.N.Y. April 20, 1995)....................27

*Brown v. Advantage Engineering, Inc.*
960 F. 2d 1013 (11th Cir. 1992)....................18, 19, 23, 27

*Chicago Tribune Company v. Bridgestone/Firestone, Inc.*
263 F.3d 1304 (11th Cir. 2001)....................19, 23, 27

*Craig v. Harney*
331 U.S. 367 (1947)....................18

*Federal Deposit Ins. Corp. v. Ernst & Ernst*
677 F.2d 230 (2nd Cir. 1982)....................25

*Fretz v. Fretz*
244 F. 3d 1323 (11th Cir. 2001)....................3

*Globe Newspaper v. Superior Court*
457 U.S. 596 (1982)....................19

*In re 50-Off Stores, L.P.*
213 B.R. 646 (Bankr. W.D. 1997)....................25

*In re Apex Oil Co.*
101 B.R. 92 (Bankr. E.D. Mo 1989)....................25

*In re Barney's, Inc.*
201 B.R. 703 (Bankr. S.D.N.Y. 1996)....................23

*In re Bell & Beckwith*
44 B.R. 661 (Bankr. N.D. Ohio 1984)....................23

*In re Carbaugh*
278 B.R. 512 (10th Cir. 2001)....................3

*In re Continental Airlines, Inc.*
150 B.R. 334 (D. Del. 1993)....................22, 23

*In re Foundation for New Era Philanthropy*
1995 WL 478841 (Bankr. E.D. Penn. May 18, 1005)....................23

*In re General Homes Corporation*
181 B.R. 898 (S.D. Texas 1995)....................................................................23

*In re Grand Jury Proceedings*
995 F.2d 1013 (11th Cir. 1993)....................................................................26

*In re Nasdaq Market-Makers Antitrust Litigation*
164 F.R.D. 346 (S.D. N. Y. 1996)..................................................................27

*In re Professional Insurance Management*
285 F.3d 268 (3d Cir. 2002).........................................................................3

*Martindale v. International Telephone & Telegraph Corp.*
594 F.2d 291 (2d Cir. 1979)....................................................................26, 27

*Maryland v. Baltimore Radio Show, Inc.*
338 U.S. 912 (1950).....................................................................................18

*Matter of Hope in behalf of Clark v. Pearson (In re Hope)*
38 B.R. 423 (M.D. Ga. 1984)....................................................................3, 22

*McEwan v. City of Norman*
926 F.2d 1539 (10th Cir. 1991).......................................................................3

*Moothart v. Bell*
21 F.3d 1499 (10th Cir. 1994)........................................................................3

*Newman v. Graddick*
696 F. 2d 796 (11th Cir. 1983).................................................................18, 26

*Nixon v. Warner Communications, Inc.*
435 U.S. 589 (1978)......................................................................................18

*Richmond Newspapers, Inc. v. Virginia*
448 U.S. 555 (1980)......................................................................................18

*Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor)*
191 B.R. 675 (N.D. Ohio 1995).............................................................3, 4, 21

*Sheppard v. Maxwell*
384 U.S. 333 (1966)......................................................................................18

*Wilson v. American Motors Corp.*
759 F. 2d 1568 (11th Cir. 1985)...........................................................19, 24, 27

**Other Authorities**

11 U.S.C. § 107 ........................................................ 2, 3, 4, 11, 14, 16, 20

11 U.S.C. § 544 ........................................................ 8

11 U.S.C. § 548 ........................................................ 8

Fed. R. Bankr. P. 8013 ........................................................ 3

Red. R. Civ. P. 26(c) ........................................................ 8, 20

## STATEMENT OF ISSUE PRESENTED

The issue in this appeal is whether the U. S. Bankruptcy Court for the Southern District of Florida abused its discretion or otherwise committed a reversible error of law by vacating prior orders that barred the public from access to the entire contents of the court files in five adversary proceedings in a substantial Chapter 7 bankruptcy case, barred the public from attending any court hearings in those proceedings, and imposed a gag order on the parties and their counsel, thereby effectively rendering the bankruptcy court a secret tribunal for the private resolution of the disputes between a bankrupt former business tycoon and his wife and the tycoon's creditors.

## APPLICABLE STANDARDS OF APPELLATE REVIEW

Appellant Lin Gosman ("Ms. Gosman") argues that United States Bankruptcy Court Larry Lessen's August 18, 2003 Order Unsealing Court Records and Allowing Public Access to Judicial Proceedings ("Public Access Order") [See Appendix, Tab 1][1] that is the subject of this Court's review should be reviewed *de novo* because the bankruptcy court "made no factual determinations in connection with [the order], but rather considered the applicability of 11 U.S.C § 107(b)(2) by reference to the same documents filed by Mrs. Gosman with this Court . . . ." See Ms. Gosman's Initial Brief ("Initial Brief") at 3.

*The Palm Beach Post* agrees that conclusions of law embodied in the Public Access Order are reviewed *de novo*, however, Ms. Gosman's assertion that the order contains "no factual determinations" is untrue. The bankruptcy court found that "All of the facts [pertaining to the issue of whether Florida would recognize Ms. Gosman's marriage to the bankrupt debtor, Abraham David Gosman ("Mr. Gosman") as valid] are of public record and could be obtained by anyone." Appendix, Tab 1 at 6. The court also found that "virtually all" of the allegations in the adversary proceedings about the facts concerning the Gosmans' marriage were true ("the "Gosmans have admitted virtually all of the underlying facts concerning their marriage and the Court is required to make a

---

[1] As noted by Ms. Gosman in her Initial Brief at p.1, n.1, she did not designate any documents to be included in the record on appeal pursuant to Bankruptcy Rule of Procedure 8006 and Local Rule 8006-1. She relies instead on documents filed with this Court *under seal* on September 5, 2003. Since Ms Gosman's record excerpts are unknown to *The Palm Beach Post*, the newspaper is filing with this brief its own set of record excerpts in the form of an Appendix. Documents in the Appendix are referenced in this brief by tab no. and internal page number if a pinpoint cite is used. Documents on file in the main Gosman bankruptcy case are also identified in the Appendix Table of Contents by the Clerk's Document numbers.

legal determination based upon the facts.") *Id.* Factual determinations such as these are reviewed for "clear error." *Fretz v. Fretz*, 244 F. 3d 1323, 1326 (11th Cir. 2001); see also Fed. R. Bankr. P. 8013.

Consideration of a motion filed pursuant to section 107(b)(2) of the Bankruptcy Code involves the exercise of discretion. *See Matter of Hope in behalf of Clark v. Pearson (In re Hope)*, 38 B.R. 423, 424 (M.D. Ga. 1984) (Motion to seal all papers filed and court docket in adversary proceeding "is addressed to the *sound discretion* of the Court"); *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor)*, 191 B.R. 675, 679 (N.D. Ohio 1995) ("The *discretion* [a bankruptcy court exercises when applying section 107(b)] lies not in whether a court may protect an interested party, but in whether the matters complained of fall within the exception and what type of protective remedy is necessary under the facts of each case"). Bankruptcy court decisions involving the exercise of discretion are reviewed for abuse of discretion. *In re Professional Insurance Management,* 285 F.3d 268, 282-83 (3d Cir. 2002); *In re Carbaugh,* 278 B.R. 512, 516 (10th Cir. 2001). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (citing *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwan v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)). In its Public Access Order, the bankruptcy court stated that it was "familiar with the pleadings and papers filed in the Adversary Proceedings and finds that the factual allegations are neither scandalous nor defamatory." Appendix, Tab 1 at 6. Thus, the bankruptcy court's finding

that the court records Ms. Gosman sought to keep sealed did not fall within the protection of section 107(b) is reviewed for abuse of discretion. *In re Phar-Mor*, 191 B.R. at 679.

## STATEMENT OF THE CASE

### I. The Nature of the Case

Ms. Gosman's appeal arises from an August 18, 2003[2] order by United States Bankruptcy Court Judge Larry Lessen granting *The Palm Beach Post's* Motion to Unseal Court Records and to Permit Public Access to Judicial Proceedings. See Public Access Order, Appendix, Tab 1. The potential salutary effect of the Public Access Order, which has not yet been realized due to the allowance of a stay pending the disposition of this appeal, is to open to the public what are perhaps the most secret judicial proceedings ever conducted before a United States Bankruptcy Court. Ms. Gosman's appeal seeks the reversal of the Public Access Order and the perpetuation of the policy of secrecy.

The secret judicial proceedings in question are five adversary proceedings (the "Adversary Proceedings") filed on June 5, 2002 in connection with the Chapter 7[3] bankruptcy petition[4] of Ms. Gosman's husband, Mr. Gosman, a Palm Beach businessman who amassed and, for a time, enjoyed a large fortune from his involvement in various health care businesses. Mr. Gosman is a defendant in all five of the Adversary Proceedings and Ms. Gosman is a defendant in three of them.

---

[2] The order was signed on August 18 and entered on the Clerk's docket on August 19.

[3] Mr. Gosman originally filed for bankruptcy under Chapter 11, but later converted to Chapter 7.

[4] Case No. 01-30953-BKC-PGH, United State Bankruptcy Court, Southern District of Florida. Mr. Gosman's bankruptcy case was originally assigned to Judge Paul H. Hyman, Jr. In June 2003, Judge Hyman recused himself and the case is now assigned to Judge Steven H. Friedman.

The exact nature of the Adversary Proceedings is unknown to the *The Palm Beach Post* because the Complaints were filed "under seal" together with "Ex-Parte Motions to Seal Complaints and Related Papers, Pleadings and Documents" which are also sealed. See Clerk's Docket Sheets for the Adversary Proceedings, Appendix, Tabs 2, 3, 4, 5 and 6. On the same day as the sealed complaints and the sealed ex-parte motions were filed, U.S. Bankruptcy Court Judge Paul G. Hyman, Jr. entered a written order granting the motions (the "June 5, 2002 Blanket Closure Order" or "Blanket Closure Order"). There is no indication on the Clerk's docket that any media organization or other representative of the public was afforded notice of the ex-parte motions or an opportunity to be heard in opposition before the Blanket Closure Order was entered. The court's rationale and findings, if any, in support of the Blanket Closure Order are also unknown because the court also sealed the Blanket Closure Order. See Appendix, Tabs 2, 3, 4, 5, and 6. In the almost eighteen months since the Blanket Closure Order was entered, virtually all of the pleadings and papers filed in the Adversary Proceedings have been filed under seal[5] except for *The Palm Beach Post's* access motion and some[6] of the papers and orders relating to the motion.

Although the June 5, 2002 Blanket Closure Order is referred to in the bankruptcy court clerk's docket sheets as relating to the *sealing* of court records, the actual restrictions it imposes on public access to the Adversary Proceedings are even more severe. The order has been repeatedly applied to require the exclusion of the public and

---

[5] See January 21, 2003 Declaration of L. Martin Reeder Jr. (See Appendix, Tab 7), which was filed in the Adversary Proceedings as an exhibit to *The Palm Beach Post's* Supplemental Memorandum of Law in Support of its Access Motion.

[6] Several papers filed by Ms. Gosman and Mr. Gosman in opposition to *The Palm Beach Post's* access motion were also filed under seal and those papers were also kept secret from the newspaper and its counsel.

the news media from all court hearings in the Adversary Proceedings except for the June 24, 2003 hearing at which counsel for *The Palm Beach Post* was permitted to attend for the limited purpose of arguing the newspaper's access motion. In addition, counsel in the Adversary Proceedings understand the June 5, 2002 Blanket Closure Order to prohibit them and their clients from discussing any matters pertaining to the nature or substance of the Adversary Proceedings with the news media or with any other member of the public, thereby completely cutting the public off from the flow of information from the parties and their counsel that throughout history has been part and parcel of our country's open judicial process.

As a result of these extraordinarily severe restrictions on public access which are without any precedent in any reported decision of a United States Bankruptcy Court, the Adversary Proceedings have been litigated in virtual total secrecy for almost 18 months. According to the Clerk's dockets in the Adversary Proceedings, the public has so far been deprived of access to approximately 1,000 court documents filed in the Adversary Proceedings. Not only has the Blanket Closure Order deprived the public of the opportunity to know and understand the claims being asserted in the Adversary Proceedings and to monitor the court's progress toward adjudicating them, but now it appears that important aspects of those claims have been adjudicated so decisively as to cause the Chapter 7 Trustee in the Gosman bankruptcy to file a Motion to Dismiss this very appeal. That motion to dismiss and the October 29, 2003 bankruptcy court order which is the basis for the motion, are also sealed and *The Palm Beach Post* thus has not even been afforded an opportunity to know and brief the grounds that the Trustee believes warrant the dismissal of this appeal to which the newspaper is a party.

In short, a policy of government sanctioned secrecy has so infected the Adversary Proceedings and everything touched by them that a United State Bankruptcy Court created and existing to serve the people of the United States has been sadly reduced to little more than a private dispute resolution service for the benefit of a former tycoon, his wife and his creditors. *The Palm Beach Post* seeks an expedited[7] affirmance by this Court of the Public Access Order so as to at least mitigate the irreparable harm that has already been done to the public's rights of access and to the bankruptcy court's reputation as a public forum for the just resolution of the nation's bankruptcy-related disputes.

## II. <u>Facts Relating to the Entry of the June 5, 2002 Blanket Closure Order</u>

Mr Gosman's bankruptcy petition disclosure schedules listed assets and liabilities in excess of $150,000,000, but claimed that more than $70,000,000 of assets (including a Palm Beach mansion, a valuable art collection, home and office furnishings and cash) were exempt from inclusion in the bankrupt estate as tenancy by the entireties property owned with his wife, Ms. Gosman. See Appendix, Tab 8.

Chagrined by the enormous size of the exemption claims and doubtful as to whether they could be justified, the Official Committee of Unsecured Creditors of Mr. Gosman (the "Committee") filed a motion requesting authority to prosecute avoidance and fraudulent transfer actions against Ms. Gosman related to the claimed exemptions. See Appendix, Tab 9. The motion alleged that Mr. Gosman, during the two to three years before filing for bankruptcy, transferred ownership of tens of millions of dollars of assets from himself to him and his wife as tenants by the entireties, and that these transfers were

[7] This Court properly recognized the need for expedited consideration and disposition of this appeal in its October 29, 2003 Order Granting Ms. Gosman's Motion for Leave to Appeal which set an expedited briefing schedule.

avoidable as fraudulent transfers under 11 U.S.C. § 548, and/or applicable Florida law pursuant to 11 U.S.C. § 544. *Id.* at 3. The Committee's motion alleged that Mr. Gosman, faced by a series of "financially devastating events," "with the active participation and assistance of lawyers and other professionals, began engaging in significant 'estate planning' transfers that were undeniably designed to remove otherwise non-exempt assets from the reach of his non-insider, third party creditors, and to park them with his wife under the cloak and purported safe harbor of tenant by the entireties property (emphasis added)."*Id.* at 5. The motion further alleged that a purported basis for some of the alleged fraudulent transfers was a 1999 amendment to a 1996 prenuptial agreement between Mr. and Ms. Gosman. *Id.* at 3, 5 and 6. According to the Committee, pursuant to the 1999 amendment, Mr. Gosman assigned all of his right, title and interest in more than $15,000,000 of artwork and furnishings to himself and Mrs. Gosman as tenants by the entireties. *Id.* The Committee alleged that "little or no consideration was given by Ms. Gosman for this transfer, and that the transfer constituted both actual and constructive fraud." *Id.* at 6.

After filing its motion to commence fraudulent transfer actions, the Committee sought information regarding Ms. Gosman's marriage and assets through its Rule 2004 Examination of her in the main case. On January 2, 2002, Ms. Gosman, who was then a non-party, filed an emergency motion pursuant to FRCP 26(c)(8) to permit the filing of her "nuptial agreements" and her "bank account statements" under seal. See Appendix, Tab 10 at 8. The motion stated that opposing counsel were in agreement that these documents be sealed and attached a proposed order. Both the proposed order and the "Protective Confidentiality Order" actually entered by the bankruptcy court on January 9,

2002 were much more restrictive of public access than the text of Ms. Gosman's motion would have led one to believe. See Appendix, Tab 10, Ex. C and Tab 11. The order not only applied to Mrs. Gosman's nuptial agreements and bank records, but also to all information and documents "in any way relating to these documents or to her financial condition." *Id.* The order required virtually every pleading or paper relating in any way to these subjects to be filed under seal and also imposed a gag order on counsel not to disseminate any confidential information to any third party, including their own clients, without first providing twenty days notice to Mrs. Gosman and obtaining a court ruling if she objected. *Id.* The creditors of Mr. Gosman did not at first object to the breadth of the order. *The Palm Beach Post* was not notified at any time that the bankruptcy court was considering an agreed protective order that would result in the sealing of court files relating to Ms. Gosman's financial matters and nuptial agreements or afforded an opportunity to be heard on the motion.

The Committee's motion for authorization to commence fraudulent transfer actions was heard by Judge Hyman on February 22, 2002. During argument, counsel for the Committee informed the bankruptcy court that discovery had revealed that the marriage of Mr. and Ms. Gosman might not be lawful because Ms. Gosman was married to someone else until ten (10) days before her wedding to Mr. Gosman. See Appendix, Tab 12 at 6. The Committee argued that if the marriage was not lawful, the exemptions claimed by Mr. Gosman for tenancy by the entireties property were invalid. During the hearing, Judge Hyman suggested that, if adversary proceedings were filed, counsel should file an agreed order regarding confidentiality and assured counsel that he would "get it signed immediately, and that way the press can't get to it. . . ." *Id.* at 23. Soon

thereafter, the bankruptcy court granted the Committee's motion for authority to commence and prosecute avoidance and fraudulent transfer actions against Ms. Gosman related to Mr. Gosman's claimed exemptions.

On June 5, 2002, the Committee filed its adversary complaint, Adv. No. 02-3155-BKY, against Mr. Gosman and Ms. Gosman. See Appendix, Tab 6, Document 3. Four other adversary proceedings were also filed on June 5, 2002. JP Morgan Chase Bank filed Adv. No. 02-3151 against Mr. Gosman and Ms. Gosman and filed Adv. No. 02-3152 against Mr. Gosman. Colonial Bank filed Adv. No. 02-3153 against Mr. Gosman and Adv. No. 02-3154 against him and Ms. Gosman.

Each of the adversary complaints was filed under seal together with an "ex-parte" motion to seal the complaint, related papers, pleadings and documents. On the same day the complaints were filed, June 5, 2002, a sealed order was entered granting the ex-parte motion to seal court records in each of the Adversary Proceedings. This was done without affording *The Palm Beach Post* or any other member of the public an opportunity to be heard in opposition to the sealing order. Since June 5, 2002, more than 1,000 documents filed with the bankruptcy court in the Adversary Proceedings have been kept sealed from the public (See Appendix, Tabs 2-6) and all of the court hearings in the Adversary Proceedings have been closed to the public. Although *The Palm Beach Post* does not have access to a copy of the June 5, 2002 Blanket Closure Order because the order itself is sealed, it seems probable from the text of the February 22, 2002 hearing transcript, (Appendix, Tab 12), that the Blanket Closure Order is similar to the January 9, 2002 order entered in the main case. See Appendix, Tab 11.

### III. Colonial Unsuccessfully Seeks to Modify the Blanket Closure Order

On June 17, 2002, Colonial Bank filed a motion in the main case, Case No. 01-30953-BKC-PGH, (See Appendix, Tab 13), seeking modification of the January 9, 2002 order which had granted Ms. Gosman's motion for a protective order. Colonial's motion, which is not sealed, revealed that the sealed complaints in the Adversary Proceedings include objections to the exemptions claimed by Mr. Gosman, for the avoidance and recovery of alleged fraudulent transfers relating to the claimed exemptions, and objections to discharge pursuant to section 523 of the Bankruptcy Code. *Id.* Colonial's motion argued that the January 9, 2002 protective order, which had originally been agreed to by Colonial and the other creditors, was no longer appropriate and should be modified because it was being applied in an overbroad manner to seal virtually <u>all</u> pleadings and papers filed in the recently commenced Adversary Proceedings. Colonial pointed out that "actions objecting to the Debtor's claim of exemptions and objecting to discharge under § 523 are common actions in bankruptcy practice" and that "substantially all of the allegations raised in each of the adversaries . . . refer to facts that are easily ascertainable through the public records." *Id. The Palm Beach Post* was not notified or provided with an opportunity to be heard with respect to Colonial's motion.

On July 11, 2002, the bankruptcy court entered an order denying Colonial's motion to modify, stating that "the court files in [the Adversary Proceedings] and all pleadings and papers filed therein shall remain under seal." See Appendix, Tab 14. The court stated the sealing was "required under 11 U.S.C. §107(b)(2)," which permits the sealing of scandalous and defamatory material. *Id.*

## IV. Judge Hyman Recuses Himself; Adversary Proceedings Reassigned to Judge Lessen

On August 19, 2002, Judge Hyman conducted a status conference on the Adversary Proceedings and announced that he had recently become aware that attorney Bob Montgomery might be a material witness in the Adversary Proceedings. If so, Judge Hyman stated that he would be required to recuse himself because his wife works for Mr. Montgomery and he would have a conflict of interest if he were required to assess Mr. Montgomery's credibility in connection with the disposition of the Adversary Proceedings. See Appendix, Tab 15. Counsel for the Trustee informed Judge Hyman at the August 19 hearing that Mr. Montgomery had represented Mr. Gosman in connection with negotiating and preparing the prenuptial agreement between him and Ms. Gosman, and that he might also have been involved in negotiating and preparing an amendment to that agreement. *Id.* at 4-5 Counsel informed the Court that Mr. Montgomery's deposition would be taken soon. Judge Hyman instructed the parties to let his clerk know if any of them later determined that Mr. Montgomery was, in fact, going to be a material witness in the Adversary Proceedings. In that event, Judge Hyman said he would either recuse himself from the entire case or, alternatively, recuse himself only from the Adversary Proceedings and let a visiting judge hear those matters. *Id.* at 6.

On October 10, 2002, according to the Clerk's Docket Sheet, orders were entered in the Adversary Proceedings "referring trial, all pending motions, and all future motions to Visiting Judge Larry Lessen in Miami." See Appendix, Tabs 2-6. Counsel for *The Palm Beach Post* have not been able to review the referral orders because they, too, are sealed.

## V. The Palm Beach Post Seeks and Ultimately Obtains an Order Vacating the Blanket Closure and Opening the Adversary Proceedings to the Public

On November 21, 2002, *The Palm Beach Post* filed a motion to Unseal Court Records and to Permit Public Access to Judicial Proceedings in the Adversary Proceedings ("Public Access Motion"). See Appendix, Tab 16. The newspaper alleged in its motion that it had learned on November 20 that Visiting Judge Larry Lessen, to whom the Adversary Proceedings had reportedly been reassigned, planned to conduct a closed hearing in the Adversary Proceedings on the morning of November 21. Counsel for *The Palm Beach Post* appeared at the scheduled hearing, informed Judge Lessen of the newspaper's motion and requested an expedited hearing. Judge Lessen announced that the motion would not be considered that day and that counsel would be required to leave the courtroom because all hearings in the Adversary Proceedings were closed. See Appendix, Tab 7. Later that same day, counsel for *The Palm Beach Post* visited the Clerk's office in Fort Lauderdale and requested an opportunity to inspect the court file for each of the Adversary Proceedings. The clerk informed the undersigned counsel that "the entire file has been sealed" and stated that "there were no exceptions" to this blanket prohibition on public access. *Id.* at 3.

On December 20, 2002, Mr. Gosman filed both an unsealed response and a sealed response in opposition to *The Palm Beach Post's* Public Access motion. Ms. Gosman filed a sealed response in opposition to the motion. The sealed responses were not served on *The Palm Beach Post*.

On January 9, 2003, Judge Hyman, without holding a hearing,[8] entered an unsealed order denying *The Palm Beach* Post's motion (the "January 9, 2003 Order"). See Appendix, Tab 17. Simultaneously with filing the January 9, 2003 Order, the Court entered findings of fact and conclusions of law under seal, that were kept secret from *The Palm Beach Post* and the public.

*The Palm Beach Post* moved to vacate the January 9, 2003 Order, arguing that (i) Judge Hyman should not have decided its Public Access Motion; (ii) the court erroneously concluded that Section 107(b) of the Bankruptcy Code required it to impose a blanket closure order; and (iii) the court applied the wrong legal standard in deciding whether to unseal the record. On January 29, 2003, the court entered an order granting *The Palm Beach Post's* motion to vacate and stating that "*The Palm Beach Post's* Motion to Unseal Court Records and to Permit Public Access to Judicial Proceeding is referred to Visiting Judge Lessen."

Judge Lessen heard *The Palm Beach Post's* Public Access Motion in open court on June 24, 2003 and announced his decision to grant the motion. Judge Lessen's Lessen's written order was entered on August 19, 2003. See Appendix, Tab 1. Judge Lessen determined that there was no legitimate reason not to continue litigating the Adversary Proceedings in secret and vacated the Blanket Closure Order. *Id.*

---

[8] Ms. Gosman's statement at p. 6 of the Initial Brief that Judge Hyman "*heard* and rejected arguments in favor of unsealing the proceedings on two occasions –i.e., on the motions by Colonial and the Post" is incorrect. *The Palm Beach Post* did not receive a *hearing* on its motion until Judge Larry Lessen heard it on June 24, 2003. Judge Hyman, having previously recused himself from presiding over the Adversary Proceedings due to concern about an appearance of impropriety, somehow reappeared in those same proceedings after they had been reassigned to Judge Lessen and issued a written order denying the newspaper's motion without a hearing.

Lin Gosman timely sought and obtained leave to appeal and obtained, over *The Palm Beach Post's* objection a stay of the bankruptcy court's order pending the disposition of this appeal.

The Trustee in Mr. Gosman's bankruptcy was permitted to intervene in the appeal and filed a Motion to Dismiss the appeal based on a recent order by Judge Lessen that the Trustee asserts may have decisive significance to the appeal. Both the recent order and the Trustee's motion have been kept secret from *The Palm Beach Post* and the public, thereby making it impossible for the newspaper to address that question. Ms. Gosman has also been permitted to intervene in the appeal to respond in secret to the Trustee's Motion to Dismiss.

## SUMMARY OF ARGUMENT

Judge Lessen's Public Access Order entered by the bankruptcy court on August 19, 2003, properly recognizes that open courtrooms, open court records and the freedom of parties and their counsel to speak to the press and public about judicial proceedings without the interference of gag orders are fundamental hallmarks of American jurisprudence that apply to the nation's bankruptcy courts in full measure.

> [T]he principle of open courts is a cornerstone of American jurisprudence and a fundamental freedom protected by both the First Amendment and the common law. When judicial proceedings are conducted in secret, the public is unable to monitor the fairness of the process and loses trust in the system.

Public Access Order, Appendix, Tab 1 at 4. Based on these First Amendment and common law principles, Judge Lessen correctly determined that a strong presumption of public access applied to the Adversary Proceedings pending before him.

The June 5, 2002 Blanket Closure Order entered by the predecessor judge at the time the Adversary Proceedings were filed was entered based upon an agreement among the parties' counsel and at the invitation of the predecessor judge who promised to sign an order "immediately". . . "that way the press can't get to it." See Appendix, Tab 12 at 23. The order apparently stemmed from a protective order entered in the main bankruptcy several months before by agreement of counsel at a time when Ms. Gosman was a non-party whose motion for protection sought merely to protection her bank records and prenuptial agreements. See Appendix, Tabs 10 and 11.

There is no evidence in the record that *The Palm Beach Post* or any other representatives of the public received notice or an opportunity to appear at a hearing in opposition to either the protective order entered in the main bankruptcy or the Blanket Protective Order entered in the Adversary Proceedings. There is no evidence that the predecessor judge ever considered the strong presumption of public access that applies to court records and proceedings prior to embarking on the path of secrecy represented by the June 5, 2002 Blanket Closure Order.

Confronted later with *The Palm Beach Post's* Public Access Motion, Judge Lessen correctly determined that he must consider the strong presumption of public access and balance that interest against any legitimate competing interest in confidentiality protected by Section 107(b) of the Bankruptcy Code.

Judge Lessen considered "the pleadings and papers filed in the Adversary Proceedings" and found that they were "neither scandalous or defamatory" and making them public would not "materially harm Mr. or Ms. Gosman." Appendix, Tab 1 at 6. With regard to the Gosman's marriage, Judge Lessen found that "all of the facts are of

public record and could be obtained by anyone" and that "the Gosman's have admitted virtually all of the underlying facts concerning the marriage and the court is required to make a legal determination based on the facts." *Id.* Based on these findings, which are entitled to deference, Judge Lessen properly exercised his discretion and determined that continuation of the extraordinarily restrictive Blanket Closure Order was unwarranted.

All of the above-described determinations by the bankruptcy court were correct applications of the law, not clearly erroneous determinations of fact and not abuses of the court's lawful discretion. Ms Gosman's arguments that *The Palm Beach Post* should have been required to demonstrate a "compelling need" for access to the Adversary Proceedings and to demonstrate that its "good faith" purpose in seeking access to the proceedings are misguided. *The Palm Beach Post*'s access rights were not determined and its arguments were not considered when the Blanket Closure Order was entered. There can be no "thumb on the scales of justice" that would prejudice those rights now. For all of these reasons, Public Access Order should be affirmed at this Court's earliest opportunity so as to mitigate to the maximum extent possible the harm that 18 months of blanket secrecy has already done to the public's right of access to the Adversary Proceedings.

## ARGUMENT

### I. Blanket Secrecy Orders Are So Destructive to First Amendment Freedoms and Common Law Rights of Access to Judicial Proceedings that They Are Rarely, if Ever, Justified.

The June 5, 2002 Blanket Secrecy Order finds no support whatsoever in any United States Supreme Court or Eleventh Circuit Court of Appeals precedent. Secret judicial proceedings are notoriously offensive to Americans and to American courts. *See*

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.") *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the courtroom is public property"); *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920 (1950) ("One of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there. . . ."); *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966) ("The principle that justice cannot survive behind walls of silence has long been reflected in the Anglo-American distrust for secret trials.").

The U.S. Supreme Court has recognized that there is a strong presumption of public access to criminal proceedings and the Eleventh Circuit has recognized that this strong presumption also applies to civil cases. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (recognizing First Amendment right of access to attend criminal trials); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978) (there is a strong common law public right of access to inspect and copy judicial records); *Newman v. Graddick*, 696 F. 2d 796, 801 (11th Cir. 1983) (recognizing the strong presumption of public access to civil judicial proceedings and court records).

*The Palm Beach Post* has not found a single reported decision in which a blanket secrecy order like the one entered in the Adversary Proceedings on June 5, 2002 has ever been upheld by the United States Supreme Court or the United States Court of Appeals for the Eleventh Circuit. Since *Newman*, the Eleventh Circuit has repeatedly reversed trial court orders that sealed court files in civil cases. See *Brown v. Advantage Engineering, Inc.*, 960 F. 2d 1013 (11th Cir. 1992) ("Once a matter is brought before a

court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances set forth by the district court in the record consistent with *Wilson*, the court file must remain accessible to the public."); *Wilson v. American Motors Corp.*, 759 F. 2d 1568, 1571 (11th Cir. 1985) ("Where, as in the present case, the [court] attempts to deny access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to that interest," *quoting Globe Newspaper v. Superior Court,* 457 U.S. 596, 606-07 (1982)); *Chicago Tribune Company v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (reaffirming that the "heightened scrutiny" test articulated in *Brown* and *Wilson* applies "where the trial court conceals the record of an entire case. . . .").

A blanket secrecy order such as the order entered in the Adversary Proceedings on June 5, 2002 cannot be sustained unless necessitated by a compelling interest and, even then, only if the restrictive order is narrowly tailored to the protection of that interest. See *Chicago Tribune Company v. Bridgestone*, 263 F. 3d 1304, 1311 (11th Cir. 2001) (this heightened level of scrutiny is required because, with blanket closures, "entire cases which would have otherwise been open to the public, are erased as if they never occurred"); *Brown v Advantage Engineering*, 960 F. 2d 1013 (11th Cir. 1992) (vacating order sealing court records pursuant to parties' settlement agreement where no extraordinary circumstances supported order); *Wilson v. American Motors Corp.*, 759 F. 2d 1568, 1571 (11th Cir. 1985) (reversing order sealing court file which was agreed to by settling parties in wrongful death action). The fact that public disclosure of the

information would "harm the [defendant's] reputation is not sufficient to overcome the strong common law presumption in favor of public access." *Id.* at 1571.

### II. Bankruptcy Code Section 107(b) Did Not Require the Bankruptcy Court to Maintain the Blanket Secrecy of the Adversary Proceedings

There is no support for Ms. Gosman's contention that, notwithstanding these clear precedents supporting public access to judicial proceedings, Judge Lessen nonetheless committed reversible error because he did not find that section 107(b) of the Bankruptcy Code required him to continue presiding over the Adversary Proceedings under a blanket of total secrecy.

In the first place, it may be questionable whether section 107(b) even applies to the Adversary Proceedings. Bankruptcy Rule of Procedure 9018, which governs main bankruptcy cases, provides the procedure for invoking the court's protective powers under section 107(b). Part VII of the Bankruptcy Code, which governs adversary proceedings, contains no counterpart to Rule 9018. Instead, Part VII expressly provides that protective orders in adversary proceedings are governed by Rule 26(c) of the Federal Rules of Civil Procedure. Congress would presumably have enacted a counterpart to Rule 9018 if it intended that section 107(b) apply to adversary proceedings.

Assuming for the sake of discussion that section 107(b) does apply to adversary proceedings, section 107(b)(2) requires a court to "protect a person with respect to scandalous or defamatory matter maintained in a paper in a case under this title." Nowhere, however, does the statute state that "protect[ing]" such a person requires a court to seal an entire court file from public view and to close all court hearings in a proceeding merely because a court file contains a paper that might embarrass the person or otherwise cast him in an unfavorable light. Such a broad reading of section 107(b)

would render section 107(a), which generally declares that bankruptcy filings are public records, a virtual nullity.[9]

No reported bankruptcy decision can be found in which a blanket order sealing all court files and closing all judicial proceedings to the public was entered based upon section 107(b). In her Initial Brief, Ms. Gosman relies heavily upon *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor)*, 191 B.R. 675 (Bankr. N.D. Ohio 1995) as support for her contention that the bankruptcy court erred by not interpreting section 107(b) as *requiring* the Blanket Closure Order to be maintained. Such reliance is misplaced. The issue in *In re Phar-Mor* was whether the Court should seal a complaint in a case that settled shortly after it was filed. The moving parties argued that the pleading failed to distinguish between their conduct and that of their former general partner, who had engaged in multiple episodes of criminal wrongdoing. Although the Court found that section 107(b) required it to provide "protection" to the movants, the court held that it had "*discretion to determine what type of remedy is necessary under the facts of each case.*" *Id.* at 679. (emphasis added) The Court analogized that power to the discretionary authority of a court to strike a scandalous pleading pursuant to FRCP 12(f). *Id.* After balancing the equities, the Court refrained from sealing the complaint. Instead, it granted the Plaintiff thirty days to voluntarily withdraw the complaint from the court file. If the plaintiff did not do that, the Court said it would consider a further order. *Id.* at 680. Thus, *In re Phar-Mor* in no way supports Mrs. Gosman's contention that the bankruptcy court erred by declining to maintain a blanket secrecy order that completely

---

[9] Section 107(a) states that "except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of the bankruptcy court are public records. . . .")

barred public access to all court files and all hearings in the Adversary Proceedings, and also imposed a gag order on the parties and their counsel. There is no precedent whatsoever that section 107(b) mandates such extraordinary relief in *any* bankruptcy case, much less that it such relief is required in this case.

The case involving section 107(b) that is most analogous to the instant case is *In re Hope*, 38 B.R. 423, 424 (Bankr. M.D. Ga. 1984). In *In re Hope*, the defendants moved to seal all papers filed in an adversary proceeding. *Id.* at 424. They argued that the complaint contained scandalous and defamatory allegations that they had committed criminal acts involving moral turpitude, such as unlawfully practicing law and fraudulently transferring bankruptcy assets. *Id.* at 425. The court refused to seal the court records, reasoning: (i) defendants were not licensed to practice law, and therefore, such allegations could not harm their business activities; and (ii) *fraudulent transfer allegations were not a sufficient basis for the court to seal its records*. *Id.* (emphasis added). The court noted that such actions are common in bankruptcy proceedings. *Id.* If the court were to grant the defendants' motion, it would result in the sealing of pleadings in numerous adversary proceedings. *Id.* The Court stated that Congress "intended that the sealing of pleadings would be the exception rather than the rule." *Id.*

Another potentially instructive case is *In re Continental Airlines v. United States*, 150 B. R. 334 (D. Del. 1993). *In re Continental Airlines* held that if the allegedly "scandalous and defamatory matter" is truthful, section 107(b)(2) cannot be used as a basis to seal a paper containing such information. *Id.* at 339. In this regard, *The Palm Beach Post* notes Judge Lessen's findings that the facts concerning the Gosman's marriage were available in the public record and that the Gosmans had admitted

"virtually all of the underlying facts." Appendix, Tab 1 at 6. The newspaper also notes that the Trustee suggested in his Motion to Intervene that the bankruptcy court's recent decision may also bear on this issue. Although *The Palm Beach Post* cannot knowledgably address this potential ground for affirmance because the pertinent information is secret, it urges the Court to consider this point.

In addition, courts have held that section 107(b) requires a court to balance the interests of the parties consistent with public access principles. *See e.g.*, *In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996) (holding that a potential investor's desire to keep a deal proposal confidential in order avoid embarrassment over its lack of success did not outweigh the public's right to access); *In re Foundation for New Era Philanthropy,* 1995 WL 478841 at *7 (Bankr. E.D. Penn. May 18, 1005) (After balancing the creditors' privacy rights against the public's right to access, the court held that a creditors list would not be sealed); *In re General Homes Corporation,* 181 B.R. 898, 902 (S.D. Texas 1995) (to seal a record under section 107(b), a court must specifically find the interest of secrecy outweighs the presumption in favor of access); *In re Continental Airlines,* 150 B.R. at 334 (court abused its discretion in sealing records relating to professional fees which fell within section 107(b) due to its failure to balance the interests of the parties); *In re Bell & Beckwith*, 44 B.R. 661, 663-64 (Bankr. N.D. Ohio 1984) (holding that the privacy interests of bankruptcy creditors do not override the public's right to access). This approach is consistent with what the bankruptcy court did here.

**III. To Continue the Blanket Order, Ms. Gosman Must Prove that Denial of Access is Necessitated by a Compelling Governmental Interest and Is Narrowly Tailored to that Interest.**

Ms. Gosman argues that *The Palm Beach Post* has the burden to demonstrate why the proceedings should now be unsealed, citing to *In re 50-Off Stores*, L.P., 213 B.R. 646 (Bankr. W.D. Tex. 1997) for the legal standard that "[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an *extraordinary circumstance* or *compelling need* warrants the requested modification." (emphasis in original). Ms. Gosman also cites *In re Apex Oil Co.*, 101 B.R. 92, 103 (Bankr. E.D. Mo. 1989) and *Federal Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230, 232 (2nd Cir.1982) as support for the conclusion that this harsh test is the correct standard to apply. All three of these cases follow *Martindale v. International Telephone & Telegraph Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) as authority for the *extraordinary circumstance or compelling need* test.

The *Martindale* test, however, has been *expressly rejected* by the Eleventh Circuit, which called it "administratively unworkable." *See In re Grand Jury Proceedings*, 995 F. 2d 1013, 1018 (11th Cir. 1993). In addition, *Martindale* and all of the other authorities cited are distinguishable in that none of those cases involved a permanent, blanket order sealing nearly all court records and closing every hearing in a civil case. Applying the *Martindale* test to uphold the denial of public access in this case would render meaningless the "strong presumption that civil actions, including bankruptcy proceedings, should be conducted publicly" which the Court recognized in the Public Access Order. Appendix, Tab 1 at 3. Here, the June 5, 2002 orders in the Adversary Proceedings were entered based on sealed motions without a court hearing and

pursuant to an agreement among the parties. It therefore appears that the Court never made any findings of fact that sealing any particular court records (much less the entire court file) or closing any particular court hearings (much less all court hearings) was necessary to accomplish any protective purpose with which a party or the Court might legitimately be concerned. In addition, nothing in the record indicates that *The Palm Beach Post* or any other member of the public was ever afforded notice that this Court was considering entering broad-sweeping secrecy orders or was afforded an opportunity to oppose the imposition of such extraordinary measures. The purported justification for the *Martindale* approach—that a litigant should be entitled to rely upon a confidentiality order—is simply not persuasive as applied to a case such as this one where the parties seeking to maintain secrecy knew or should have known that the order allegedly relied upon was overbroad, not based on findings and was entered without giving the press and public notice and a fair opportunity to be heard.

Other cases with facts closer to the instant case have held that the *Martindale* standard does not apply to media or private litigants who seek modification of a protective order. *See e.g.*, *Akron Beacon Journal v. Metropolitan Life Ins. Co.*, 1995 WL 234710 at *14 (S.D.N.Y. April 20, 1995); and *In re Nasdaq Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 356 (S.D.N.Y. 1996). Instead of putting the burden of proof on the news media to show an extraordinary circumstance, the "burden continues to rest with [the proponent of the seal] to show that the Protective Order has been based and continues to be based on good cause." *Id.*

In fact, when a court conceals all records in a case from the public and the media, it is clear that any order denying public access will be subjected to the Eleventh Circuit's

"heightened scrutiny" test. *Wilson.*, 759 F.2d at 1571; *Newman* 696 F.2d at 802; *Brown*, 960 F.2d at 1016; and *Chicago Tribune Company*, 263 F.3d at 1311. The Court must determine whether denial of access is necessitated by a compelling government interest and is narrowly tailored to serve that interest. *Id.* This heightened scrutiny is required because, with blanket closures, entire cases, which would have otherwise been open to the public, are erased as if they never occurred. *Id.*

In the instant case, the protection of the financial and marital records of Ms. Gosman can hardly be considered a compelling governmental interest which would necessitate the Court's protection in light of the strong presumption in favor of open access to court proceedings and records.

Respectfully submitted,

REEDER & REEDER P.A.

By: [signature]

L. Martin Reeder, Jr.
Florida Bar Number 308684
Ginny R. Neal
Florida Bar Number 0195294
675 West Indiantown Rd., Suite 201
Jupiter, Florida 33458
Telephone: (561) 575-9750
Facsimile: (561) 575-9765
martin@reederandreeder.com
ginny@reederandreeder.com

*Attorneys for The Palm Beach Post*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of *The Palm Beach Post's* Brief of Appellee was served by facsimile copy and U.S. Mail this 25th day of November, 2003 on:

Mindy A. Mora, Esq.
Bilzin Sumberg Dunn
200 S. Biscayne Blvd. #2500
Miami, FL 33131
Tel: 305.350.2414
Fax: 305.374.7593

David C. Cimo, Esq.
Genovese Lichtman
100 S.E. 2nd Avenue
Suite 3600
Miami, FL 33131
Tel: 305.372.2439
Fax: 305.349.2310
dcimo@glijb.com

L. Martin Reeder, Jr.